IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**KIMBERLY WAINWRIGHT**                                                                 **PLAINTIFF**

v.                                        No. 4:10-cv-1190-DPM

**CHARLES "DOC" HOLLADAY,**
**in his individual and official**
**capacities; RANDY MORGAN;**
**SHAWN SMITH; and KELLY**
**PAXSON, Captain, all in their**
**individual capacities**                                                              **DEFENDANTS**

ORDER

After an inmate escaped in a van that Kimberly Wainwright had left running, Wainwright lost her job as a deputy at the Pulaski County Sheriff's Department. Wainwright says that a male jailer was also at fault for the escape, but that he was not fired or even disciplined. Wainwright brings gender-discrimination claims under § 1983 and the Arkansas Civil Rights Act. The Defendants—the Pulaski County Sheriff and other Department officers—move for summary judgment across the board.

**1. The Background Law.** Summary judgment is appropriate if the Pulaski County Defendants "show[ ] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court views genuinely disputed facts in the light most

favorable to Wainwright. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). And the Court does not make credibility calls or weigh the evidence; these are jury functions. *Ibid.* Wainwright must offer "specific facts showing that there is a genuine issue for trial[,]" raising more than "some metaphysical doubt" about the material facts. *Ibid.* (quotation omitted). If the record, taken as a whole, "could not lead a rational trier of fact to find for [Wainwright], [then] there is no genuine issue for trial." *Ibid.* (quotation omitted).

The Court analyzes § 1983 claims and ACRA claims like Wainwright's, where there is no direct evidence of discrimination, under the familiar *McDonnell Douglas* burden-shifting framework. *Clegg v. Arkansas Dep't of Correction*, 496 F.3d 922, 926 (8th Cir. 2007). To make a *prima facie* case of gender discrimination, Wainwright must show that she: "(1) is a member of a protected class; (2) was qualified for her job; (3) suffered an adverse employment action; and (4) alleged facts that give rise to an inference of gender discrimination." *Norman v. Union Pacific R.R. Co.*, 606 F.3d 455, 460-61 (8th Cir. 2010). If Wainwright makes her *prima facie* case, then the burden of production shifts to the Pulaski County Defendants to offer some legitimate,

nondiscriminatory reason for firing Wainwright. *Tyler v. University of Arkansas Board of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011). Wainwright must then show that the Defendants' proffered reason was pretextual and that unlawful discrimination was instead a motivating factor. *Ibid.*

**2. A *Prima Facie* Case?** That Wainwright has proved elements one and three of her *prima facie* case is undisputed. On element two, the Pulaski County Defendants say that Wainwright's intentional violation of the written policy against leaving an unattended vehicle running shows that she was not meeting job expectations. But Wainwright need only show that, setting aside the Defendants' reason for firing her, she was "*otherwise* meeting expectations or *otherwise* qualified." *Lake v. Yellow Transportation, Inc.*, 596 F.3d 871, 874 (8th Cir. 2010) (emphasis original). Other than the policy violation, the Pulaski County Defendants have provided no facts showing that Wainwright was not otherwise meeting expectations or otherwise qualified. So she meets the second element.

The Pulaski County Defendants also argue that Wainwright failed to establish element four of her *prima facie* case: facts raising an inference of gender discrimination. Here, the Court sees several genuine disputes of

material fact for a jury to decide. First, did Michael Herron, the other officer involved, know that Wainwright had left the unattended van unlocked and running before he led the prisoners out into the yard to load up? Wainwright says he did; Randall Morgan, the detention chief who investigated the incident, concluded that Wainwright's claim was "unsubstantiated." Second, did Wainwright tell Herron to wait while she went back to lock the personal property room before taking the prisoners outside? She says that she did; Morgan again found Wainwright's claim "unsubstantiated." Third, did Herron decide to proceed outside with the eleven prisoners without Wainwright's assistance? Wainwright again says that he did; Herron, however, told Captain Paxson that he thought Wainwright was bringing up the rear. Last, even if Herron had waited for Wainwright, could they have kept the prisoner from commandeering the vehicle and escaping? She says yes; Morgan concluded no.

Viewing the disputed facts in the light most favorable to Wainwright, a discriminatory inference arises. A reasonable jury could conclude that both Wainwright and Herron were partially responsible for the prisoner's escape. Both Herron and Wainwright violated Department policy — she by leaving the

running vehicle unattended, and he by escorting more than five inmates by himself. In the end, however, Wainwright, a female, was fired for her role in the escape, while Herron, a male, was not even disciplined. Wainwright has made her *prima facie* case.

**3. A Pretext for Unlawful Discrimination?** The Pulaski County Defendants say that Wainwright has failed to offer any proof that Morgan's legitimate, nondiscriminatory reason for firing Wainwright—her violation of the rule against leaving the van running unattended, which led to the prisoner's escape—was really a pretext for unlawful discrimination. At the pretext stage, the test for determining whether Herron is similarly situated to Wainwright is "rigorous." *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009). Wainwright must show that she and Herron "are similarly situated in all relevant respects." *Ibid.* "To be probative evidence of pretext, the misconduct of the more leniently disciplined employees must be of comparable seriousness." *Ibid.* (citation omitted).

Viewed in the light most favorable to Wainwright, the facts are these. Wainwright started the van and circled back to assist Herron in loading the prisoners. Herron was at the front of the line of prisoners, Wainwright at the

back. She realized that she needed to lock the personal property room before leaving. Wainwright told Herron to wait until she returned before starting the loading process. Herron proceeded without her. Once outside, one of the prisoners broke line and jumped into the driver's seat of the van, drove it through the gate, and escaped. If Herron had waited on Wainwright, then they could have prevented the escape. Herron and Wainwright both violated policies of comparable seriousness, but after an investigation, Wainwright was terminated and Herron was not disciplined at all. There is no indication in the summary judgment record that Wainwright and Herron had differing disciplinary records, which might support different discipline. These facts create a jury issue on pretext. But there is more.

With their reply brief, the Pulaski County Defendants offered Lesa Warner's affidavit. Warner describes a similar 2002 incident in which an inmate escaped from a parked and unattended transport bus. The deputies involved, two men, were both fired for policy violations. The Defendants point to this other incident as proof that they do not discriminate on the basis of gender: after the earlier similar incident, they fired two men. This proof, however, also could support Wainwright's pretext claim. After the 2002

escape, *both* officers were terminated. Here, Herron escaped discipline. A reasonable jury could conclude that the Pulaski County Defendants' disparate treatment of Wainwright and Herron is evidence that the Defendants' stated reasons for terminating Wainwright were pretextual.

**4. Qualified Immunity?** The Pulaski County Defendants also claim qualified immunity. There are two questions. First, "[t]aken in the light most favorable to [Wainwright], do the facts alleged show the [Defendants'] conduct violated a constitutional right?" *Duckworth v. St. Louis Metropolitan Police Dep't*, 491 F.3d 401, 405 (8th Cir. 2007) (quotation omitted). "[Wainwright's] right to be free from gender discrimination is secured by the equal protection clause of the Fourteenth Amendment." *Ibid.* (quotation omitted). The material facts are genuinely disputed. Taking them to be as Wainwright says, a reasonable fact finder could conclude that the Defendants fired Wainwright based on her gender.

Second, was the constitutional right clearly established "in light of the specific context of the case[?]" *Duckworth*, 491 F.3d at 407 (quotation omitted). The inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Ibid.* (quotation

omitted). Here too, there is a question for the jury: is the Defendants' nondiscriminatory reason for firing Wainwright legitimate or a pretext for unlawful discrimination? "[I]f there is a genuine dispute concerning predicate facts material to the qualified[-]immunity issue, there can be no summary judgment." *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003). Because the material predicate facts are genuinely disputed, qualified immunity is not appropriate here.

\* \* \*

Defendants' motion for summary judgment or for qualified immunity, *Document No. 18*, denied. Wainwright's request to file a supplemental brief, *Document No. 29*, denied as moot. A new scheduling order resetting the trial (and pre-trial deadlines) will issue. The Clerk should correct the docket sheet to reflect the Court's earlier order dismissing all the official-capacity claims against Morgan, Smith, and Paxson. *Document No. 12, at 11–12*.

So Ordered.

*[signature]*

D.P. Marshall Jr.
United States District Judge

23 March 2012